# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

SHAYLA BROOKS,

    *Plaintiff,*

vs.

JANINE HINZMAN in her individual capacity, and JILL ACHATZ in her individual capacity,

    *Defendants.*

Case No. 13-CV-2410-EFM

## MEMORANDUM AND ORDER

Plaintiff Shayla Brooks brings this action against Defendants Janine Hinzman and Jill Achatz under 42 U.S.C. § 1983 for violations of her rights under the Fourteenth Amendment. Plaintiff asserts that Defendants violated her constitutional right of familial association by removing her youngest children from her care without a warrant or exigent circumstances. Defendants assert that they are entitled to qualified immunity on Plaintiff's claim. The parties filed cross motions for summary judgment (Docs. 82 and 86), which are currently before the Court. Because the Court finds that Defendants are entitled to qualified immunity, the Court grants Defendants' motion for summary judgment and denies Plaintiff's motion for summary judgment.

## I. Factual and Procedural Background[1]

Plaintiff has five children, K.T., S.H., A.J.B., A.S.B., and Z.C.B. For purposes of this Order, the two oldest children, K.T. and S.H., are referred to as "the Older Children," and the three youngest children, A.J.B., A.S.B., and Z.C.B., are referred to as "the Younger Children." Jarrod Brooks is the natural father of the Younger Children. Defendants Hinzman and Achatz are employees of the Kansas Department of Children & Families (formerly Kansas Department of Social and Rehabilitative Services ("SRS")). Defendant Achatz was Defendant Hinzman's supervisor in the matter involving Plaintiff's children.

On February 11, 2010, an incident occurred in Plaintiff's home, during which Plaintiff became upset at her children and began throwing things and yelling at them. After the incident, Plaintiff called her mother and asked her to take all five children to her house to stay. The next day, Plaintiff telephoned her mother to let her know that she was coming to pick up the children. Instead of allowing Plaintiff to take the children home, Plaintiff's mother called the police, and the children were placed in Police Protective Custody ("PPC").

On February 19, 2010, Cloud County District Attorney Robert Walsh filed Child in Need of Care ("CINC") petitions with the Cloud County District Court for each of Plaintiff's five children. The CINC cases involving the Younger Children were dismissed following a period of informal supervision, but the cases involving the Older Children continued to be prosecuted. On December 29, 2010, the Cloud County District Court ordered that the Older Children be placed in SRS custody. The Cloud County District Court also ordered that any visitation between Plaintiff and the Older Children was at the discretion of SRS and TFI, Inc. At that time, TFI was

---

[1] In accordance with summary judgment procedures, the Court has set forth the uncontroverted facts, and they are related in the light most favorable to the non-moving party.

the contract provider for the State of Kansas charged with overseeing the State's foster care system.[2] TFI developed, monitored, and implemented the case plan for the Older Children while the children were involved in the CINC cases.

Between December 29, 2010, and July 31, 2011, the Older Children remained in out-of-home placements with relatives, although they did have visitations with Plaintiff. On August 1, 2011, Plaintiff's oldest child was placed in Plaintiff's home on a thirty-day trial basis. Between September 23, 2010 (the date on which the CINC cases for the Younger Children were dismissed) and August 15, 2011, SRS received seven reports of alleged abuse and/or neglect by Plaintiff against one or more of her children.

On August 15, 2011, Defendants participated in a conference call with Mary Kay Talley, a TFI supervisor, and Carol Miller, the CASA worker appointed to represent the Older Children in the CINC cases. TFI initiated the call to discuss the concerns it had about Plaintiff's children remaining in her home. The children's therapist, Carly Bloomfield, also provided information to the call participants but was not present on the call itself.

During the conference call, the participants agreed that the Older Children should be returned to their foster parents and that the Younger Children would not be safe in Plaintiff's home after the removal of the Older Children. The participants also decided that it would be best if the Younger Children stayed with their father, Jarrod Brooks. At the time, Brooks had joint legal and joint residential custody of the children.

Defendant Achatz instructed Defendant Hinzman to consult with Cloud County District Attorney Walsh for guidance on how to proceed legally before arranging for the Younger

---

[2] TFI oversaw the State's foster care system through at least August 16, 2011.

Children to stay with their father. Defendant Hinzman and Brooks met with Walsh on August 16, 2011. Defendant Hinzman told Walsh about the concerns she and others had for the safety of the Younger Children after the Older Children were removed. Walsh agreed that the Younger Children should not be in Plaintiff's home after the removal of the Older Children. He then told Defendant Hinzman that she should ask Plaintiff if she would allow the Younger Children to stay with Brooks, and if she declined, that Walsh would file CINC petitions for the Younger Children. Walsh then told Hinzman that if Plaintiff did not allow the Younger Children to go with Brooks, she should attempt to put the Younger Children in PPC.

Defendant Hinzman and Brooks went to Plaintiff's home after their meeting with Walsh on August 16, 2011. Defendant Hinzman informed Plaintiff that the Older Children would be returning to their foster care placements that day. She then told Plaintiff that Plaintiff could either allow the Younger Children to leave with Brooks, or if she declined, Defendant Hinzman would seek to have the Younger Children placed in PPC. Defendant Hinzman did not inform Plaintiff that she had the right to refuse to allow any of her children leave the home. Plaintiff agreed to let the Younger Children leave with Brooks, and the Younger Children left Plaintiff's home in his custody and care.

At the time the Younger Children left with Brooks, he and Plaintiff had a general agreement concerning parenting time for their children. However, there was no formal court order establishing parenting time on that particular day. On August 17, 2011, one day after the Younger Children left her home with their father, Plaintiff picked up her two youngest children from their daycare provider. The oldest of Plaintiff's Younger Children returned to Plaintiff's home five days later following the end of Brook's normal parenting time. Walsh never filed a CINC petition related to the August 16, 2011, activities, and no emergency orders were issued.

Plaintiff filed her Complaint on August 12, 2013. Although the Complaint originally asserted multiple claims against five individual defendants and one corporate defendant, only one claim remains at issue in this case. Plaintiff brings that claim under 42 U.S.C. § 1983 against Defendants Hinzman and Achatz in their individual capacities. Plaintiff alleges that Defendants violated her Fourteenth Amendment right of familial association when they removed her Younger Children from her care without a warrant or exigent circumstances on August 16, 2011. Defendants contend that they are entitled to qualified immunity. The parties have filed cross-motions for summary judgment, which are currently before the Court.

## II.     Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[3] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[4] The movant bears the initial burden of proof, and must show the lack of evidence on an essential element of the claim.[5] If the movant carries this initial burden, the nonmovant that bears the burden of persuasion at trial may not simply rest on its pleading but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[6] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot

---

[3] Fed. R. Civ. P. 56(c).

[4] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[5] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[6] *Id*. (citing Fed. R. Civ. P. 56(e)).

survive a motion for summary judgment.[7]  The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[8]

Though the parties in this case filed cross-motions for summary judgment, the legal standard remains the same.[9]  Each party retains the burden of establishing the lack of a genuine issue of material fact and entitlement to judgment as a matter of law.[10]  Each motion will be considered separately.[11]  To the extent the cross-motions overlap, however, the court may address the legal arguments together.[12]  Finally, summary judgment is not a "disfavored procedural shortcut," but is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[13]

### III.   Analysis

Defendants move for summary judgment on Plaintiff's claim that Defendants seized Plaintiff's Younger Children from her home in violation of her rights under the Due Process Clause of the Fourteenth Amendment.  Defendants argue that they are entitled to qualified immunity because (1) they did not engage in any conduct that violated Plaintiff's constitutional rights, and (2) even if a constitutional violation did occur, Defendants did not knowingly violate a clearly established constitutional right.  Plaintiff counters that Defendants are not entitled to

---

[7] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[8] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[9] *City of Shawnee v. Argonaut Ins. Co.*, 546 F. Supp. 2d 1163, 1172 (D. Kan. 2008).

[10] *United Wats, Inc. v. Cincinnati Ins. Co.*, 971 F. Supp. 1375, 1381-82 (D. Kan. 1997) (citing *Houghton v. Foremost Fin. Servs. Corp.*, 724 F.2d 112, 114 (10th Cir. 1983)).

[11] *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

[12] *Berges v. Standard Ins. Co.*, 704 f. Supp. 2d 1149, 1155 (D. Kan. 2010).

[13] *Celotex*, 477 U.S. at 327 (citing Fed. R. Civ. P. 1).

qualified immunity and that she is entitled to judgment as a matter of law on her claim. The Court first will address whether Defendants are entitled to qualified immunity.

"Qualified immunity protects officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' "[14] Qualified immunity leaves "ample room for mistaken judgments," protecting "all but the plainly incompetent or those who knowingly violate the law."[15] When a defendant raises qualified immunity on summary judgment, the burden shifts to the plaintiff to demonstrate that (1) the defendant's actions violated a constitutional or statutory right and (2) the constitutional or statutory right was clearly established at the time of the conduct at issue.[16]

### A.   Defendant Achatz

Defendant Achatz acted as Defendant Hinzman's supervisor for the case involving Plaintiff and her children. In the Tenth Circuit, "[a] § 1983 defendant sued in an individual capacity may be subject to personal liability and/or supervisor liability."[17] However, § 1983 " 'does not authorize liability under a theory of respondeat superior.' "[18] "The plaintiff therefore must show an 'affirmative link' between the supervisor and the constitutional violation."[19] To

---

[14] *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[15] *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

[16] *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (citation omitted).

[17] *Id*. at 435 (citation omitted).

[18] *Id*. (quoting *Schneider v. City of Grand Junction Police Dept*., 717 F.3d 760, 767 (10th Cir. 2013)).

[19] *Id*. (quoting *Schneider*, 717 F.3d at 767).

bring a claim based on supervisor liability, a plaintiff must show three elements: "(1) personal involvement; (2) causation; and (3) state of mind."[20]

The Court finds that Plaintiff has not established an affirmative link between Defendant Achatz's conduct and the alleged Fourteenth Amendment violation. First, Plaintiff has not shown that Defendant Achatz was personally involved in the alleged seizure of Plaintiff's children. Although Defendant Achatz participated in the teleconference in which the child protective agencies agreed that the Younger Children should be removed from Plaintiff's home, Defendant Achatz told Defendant Hinzman to first contact the Cloud County District Attorney Walsh before proceeding. It was only after Defendant Hinzman spoke with Walsh that Plaintiff's children were removed. Defendant Achatz had no involvement with the actual removal on August 16, 2011, and the fact that Defendant Achatz instructed Defendant Hinzman to contact Walsh for guidance on how to legally proceed does not, by itself, violate Plaintiff's constitutional rights.

Second, Plaintiff has not shown the required causation between Defendant Achatz's conduct and the alleged violation. "The second element 'requires the plaintiff to show that the defendant's alleged action(s) caused the constitutional violation' by setting 'in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights.' "[21] The uncontroverted facts show that Defendant Achatz did not set in motion a series of events that she knew or should have known would deprive Plaintiff of her familial rights. To the contrary, Defendant Achatz sought to protect

---

[20] *Id.* (citing *Schneider*, 717 F.3d at 767).

[21] *Id.* (citing *Schneider*, 717 F.3d at 768).

Plaintiff's legal rights by requiring Defendant Hinzman to consult with Walsh before proceeding with the removal.

Finally, Plaintiff has not shown that Defendant Achatz had the requisite state of mind necessary to establish supervisor liability under § 1983. "The third element 'requires the plaintiff to show that the defendant took the alleged actions with the requisite state of mind,' which 'can be no less than the *mens rea* required' of the subordinates to commit the underlying constitutional violation."[22] Again, the fact that Defendant Achatz instructed Hinzman not to proceed until she contacted Walsh shows that Defendant Achatz did not intend to violate Plaintiff's constitutional rights.

In sum, Plaintiff has not met her burden to show any of the three elements required to impose supervisor liability under § 1983. Specifically, Plaintiff has not shown personal involvement, causation, or the requisite state of mind. Defendant Achatz is entitled to qualified immunity on Plaintiff's claim, and the Court grants summary judgment in her favor. Conversely, the Court denies Plaintiff's motion for summary judgment with respect to Defendant Achatz.

**B.     Defendant Hinzman**

Defendant Hinzman makes two arguments as to why the Court should grant her motion for summary judgment. First, she contends that Plaintiff failed to meet her burden under the two-part qualified immunity test to show that Defendant Hinzman violated a clearly established constitutional right. Second, Defendant Hinzman contends that, even if the Court found that she violated a clearly established constitutional right, she is still entitled to qualified immunity

---

[22] *Id.* (quoting *Schneider*, 717 F.3d at 769, and *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010)).

because extraordinary circumstances prevented her from knowing that her actions were unconstitutional. The Court will address each of these arguments below.

### 1. Two-Prong Qualified Immunity Analysis

As set forth above, when a defendant asserts qualified immunity, the plaintiff must show (1) that the defendant violated a constitutional right and (2) that the law was clearly established at the time the alleged violation occurred.[23] The Court has discretion to determine which of the two prongs to tackle first.[24] Therefore, the Court will first examine whether there was a clearly established constitutional right at the time Defendant Hinzman facilitated the transfer of the Younger Children to their father.

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."[25] " 'The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [defendant] that his conduct was unlawful in the situation he confronted.' "[26]

Plaintiff primarily relies on two cases from the Tenth Circuit in support of her argument that Defendant Hinzman violated a clearly established constitutional right—*Malik v. Arapahoe County Department of Social Services*[27] and *Roska v. Peterson*.[28] In *Malik*, the plaintiff parent

---

[23] *Id*. at 411 (citations omitted).

[24] *Ashcroft v. al-Kidd*, -- U.S. --, 131 S. Ct. 2074, 2080 (2011).

[25] *Estate of Booker*, 745 F.3d at 427 (quoting *Fogarty v. Gallegos*, 523 F.3d 1147, 1161 (10th Cir. 2008)).

[26] *Thomas*, 765 F.3d at 1194 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

[27] 191 F.3d 1306 (10th Cir. 1999).

[28] 328 F.3d 1230 (10th Cir. 2003).

-10-

sued the defendant police officers under § 1983 after the defendants seized the plaintiff's child based on a warrant obtained during an *ex parte* hearing with a magistrate judge.[29] The defendants failed to inform the magistrate of crucial facts when obtaining the warrant.[30] In analyzing whether the defendants were entitled to qualified immunity, the Tenth Circuit stated that "it was clearly established law that, except in extraordinary circumstances, a parent has a liberty interest in familial association and privacy that cannot be violated without adequate pre-deprivation procedures."[31] The Tenth Circuit also stated that "it was clearly established law that government officials' procurement 'through distortion, misrepresentation and omission' of a court order to seize a child is a violation of the Fourth Amendment."[32] The circuit therefore found that the plaintiff had met her burden on the second prong of the qualified immunity test.[33]

In *Roska*, school employees expressed concern about the health of a twelve-year-old child to Utah's Division of Child and Family Services.[34] One of the caseworkers assigned to the case suspected that the mother suffered from Munchausen Syndrome by Proxy.[35] After conferring with the Assistant Attorney General of Utah, caseworkers, accompanied by police, entered the family's residence without a warrant and removed the child.[36] The child was then

---

[29] 191 F.3d at 1311, 1313.

[30] *Id*. at 1311-12.

[31] *Id*. at 1315 (citations omitted).

[32] *Id*. at 1316 (citation omitted).

[33] *Id*.

[34] 328 F.3d at 1237.

[35] *Id*. at 1238.

[36] *Id*.

placed in a foster home, where he remained until a court ordered him returned to his parents.[37] The plaintiffs brought a § 1983 claim against the caseworkers who removed the child from the plaintiffs' home and other state officials, asserting in part that the defendants violated their Fourteenth Amendment right of familial association.[38]

In analyzing the plaintiffs' claim, the Tenth Circuit reiterated the general principle set forth in *Malik* that " 'except in extraordinary circumstances, a parent has a liberty interest in familial association and privacy that cannot be violated without adequate pre-deprivation procedures.' "[39]  The Tenth Circuit further found that the defendants did not provide the plaintiffs any process before removing the child and that the child was not in immediate danger.[40]  Thus, the circuit found that clearly established law put the defendants on notice that their conduct violated the Constitution.[41]

Plaintiff contends that, based on *Roska* and *Malik*, there is a clearly established right in the Tenth Circuit that a parent has a liberty interest in familial association and that right cannot be violated absent pre-deprivation procedures or emergency circumstances.  While the Court agrees with Plaintiff that *Roska* and *Malik* clearly establish such a right, Plaintiff's reliance on these cases is misplaced.  The facts surrounding the removal of the children in *Roska* and *Malik* are significantly different from this case.  In both of those cases, the child at issue was removed from his parents' custody and placed in state custody.  Here, the Younger Children were never

---

[37] *Id*.

[38] *Id*. at 1239.

[39] *Id*. at 1250 (quoting *Malik*, 191 F.3d at 1315).

[40] *Id*.

[41] *Id*.

-12-

placed in state custody. Instead, the Younger Children were at all times in the custody of one of their parents, both of whom had joint legal and residential custody of the children.[42] This key factual difference prevents Plaintiff from relying on *Roska* and *Malik* to show that there was a clearly established constitutional right.

Furthermore, the Court simply cannot extend the general principle established in *Roska* and *Malik* (that a parent has a liberty interest in familial association that cannot be violated absent pre-deprivation procedures or emergency circumstances) to this case. When analyzing the second prong of the qualified immunity test, it is "not enough to look at," and find a state actor liable based on "generalized principles."[43] In addressing this issue, the Tenth Circuit stated that

> [t]he Supreme Court vigorously underscored the point recently, reminding us with some apparent exasperation that it has "repeatedly told courts . . . not to define clearly established law at a high level of generality. The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of a particular conduct is clearly established."[44]

For a court to decide whether there is a violation of clearly established law, "a 'more particularized' inquiry is required."[45] The Court must determine whether " 'every reasonable official would have understood that what he [did] violate[d] that right.' "[46]

---

[42] At one point in her response brief, Plaintiff argues that Defendant Hinzman's actions in facilitating the transfer of the Younger Children from her to their father constituted a "seizure" of the children. Plaintiff claims that state actors can be found to have engaged in a seizure even where they do not actually take possession of property. Plaintiff relies primarily on *Soldal v. Cook Cnty. Illinois*, 506 U.S. 56 (1992), and *Marcus v. McCollum*, 394 F.3d 813 (10th Cir. 2004), in support of her argument. These cases involve police officers who actively assisted private parties in the illegal repossession of another's property. Unlike these cases, Defendant Hinzman never assisted in the illegal seizure of the Younger Children because Brooks had joint legal and joint residential custody of the children when they left Plaintiff's house with him. Therefore, *Soldal* and *Marcus* are inapplicable to this case.

[43] *Kerns v. Bader*, 663 F.3d 1173, 1183 (10th Cir. 2011) (citing *Medina v. City and Cnty. of Denver*, 960 F.2d 1493, 1497-98 (10th Cir. 1992)).

[44] *Id.* (quoting *Ashcroft*, 131 S. Ct. at 2084).

[45] *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The Court is unaware of any case law that supports a finding that Defendant Hinzman's conduct violated clearly established law. No reasonable social worker in Defendant Hinzman's position would believe that facilitating the transfer of children from one parent to another, both of whom had joint legal and residential custody, violated a parent's rights. Therefore, the Court finds that Plaintiff has failed to meet her burden to show that the law was clearly established.

Because the Court finds that Plaintiff failed to meet the second prong of the qualified immunity test, it declines to address the first prong, *i.e.*, whether Defendant Hinzman violated a constitutional right. Defendant Hinzman is therefore entitled to qualified immunity, and the Court grants summary judgment in her favor. Conversely, the Court denies Plaintiff's motion for summary judgment with respect to Defendant Hinzman.

### 2. Extraordinary Circumstances

Defendant Hinzman also argues that even if the Court found that she violated a clearly established constitutional right, she is still entitled to qualified immunity because of extraordinary circumstances. "Once the plaintiff has established the inference that the defendant's conduct violated a clearly established constitutional right, a qualified immunity defense ordinarily fails."[47] But, a defendant may still be entitled to qualified immunity if she can show that " 'extraordinary circumstances' intervened and "so prevented [her] from knowing that [her] actions were unconstitutional that [s]he should not be imputed with knowledge of an admittedly clearly established right."[48]

---

[46] *Id.* (quoting *Ashcroft*, 131 S. Ct. at 2083).

[47] *Hollingsworth v. Hill*, 110 F.3d 733, 740 (10th Cir. 1997) (citing *Cannon v. City and Cnty. of Denver*, 998 F.2d 867, 870-71 (10th Cir. 1993)).

[48] *Id.* (citing *Cannon*, 998 F.2d at 871).

The extraordinary circumstance exception that is most often relied upon is advice of legal counsel.[49] The Tenth Circuit has identified four factors that are applied on a case-by-case basis to help determine when extraordinary circumstances exist in the context of reliance on counsel.[50] These include: " '[1] how unequivocal and specifically tailored to the particular facts giving rise to the controversy, the advice was, [2] whether complete information had been provided to the advising attorney(s), [3] the prominence and competence of the attorney(s), and [4] how soon after the advice was received the disputed action was taken.' "[51]

Applying the undisputed facts to the four factors listed above favors a finding of qualified immunity. First, Walsh's advice to Defendant Hinzman was specifically tailored to the facts of this case. Defendant Hinzman asked Walsh for advice on how to legally proceed with regard to the Younger Children after the Older Children were removed from Plaintiff's home. Walsh informed Defendant Hinzman that she could either see if Plaintiff would agree to let their children leave with Brooks, or if Plaintiff would not agree, then Defendant Hinzman should seek to have the children placed in PPC. This advice was directly applicable to the facts giving rise to the controversy in this case.

Second, the undisputed facts show that Walsh had the complete information necessary to give proper advice. During their meeting, Defendant Hinzman informed Walsh of her and the other state agencies' concerns regarding the safety of the Younger Children. Furthermore, Walsh was intimately familiar with Plaintiff's situation, as he had spent the previous eighteen months prosecuting the CINC cases involving the Older Children.

---

[49] *V-1 Oil Co. v. Wyoming Dep't of Envtl. Quality*, 902 F.2d 1482, 1488 (10th Cir. 1990).

[50] *Hollingsworth*, 110 F.3d at 741.

[51] *Id*. (quoting *V-1 Oil Co*., 902 F.2d at 1489).

Third, Walsh is both a prominent and competent attorney. As Cloud County District Attorney, he is the chief law enforcement officer of Cloud County, Kansas. Walsh has held this position since 1984, and nothing in the record indicates that he is incompetent.

Fourth, little time elapsed between Walsh advising Defendant Hinzman as to what actions she could take and Defendant Hinzman acting on his advice. After leaving Walsh's office, Defendant Hinzman went directly to Plaintiff's home. Defendant Hinzman then followed Walsh's advice, telling Plaintiff that she could allow her children to leave with Brooks, or that Defendant Hinzman could seek to have the children placed in PPC. Thus, this factor, and the three others, favors the application of the extraordinary circumstances exception in the context of reliance on legal counsel.

Plaintiff makes two arguments as to why the exception does not apply, but neither is persuasive. First, Plaintiff asserts that the plan to remove the Younger Children from the home was made one day before Defendant Hinzman met with Walsh. While Defendants and other state agencies agreed on August 15, 2011, that it would be best if the Younger Children could be transferred to their father, Defendant Hinzman did not take any action regarding the children until after she met with Walsh on August 16, 2011. Furthermore, Defendant Hinzman's actions on August 16, 2011, were based on Walsh's advice. Therefore, Plaintiff's first argument has no merit.

Second, Plaintiff asserts that Defendant Hinzman's reliance on Walsh's advice is misplaced because the constitutional right in question was clearly established in 2003 and not 2011. This argument misconstrues the "extraordinary circumstances" exception. The advice of counsel defense allows a defendant to obtain qualified immunity *despite* a court's finding that the

-16-

defendant violated a clearly established constitutional right.[52] Thus, if the constitutional right was clearly established in 2003 as Plaintiff asserts, this actually supports the application of the exception. Plaintiff's second argument seems to miss this point, and thus, is also meritless.

The Court finds that Defendant Hinzman followed the legal advice she obtained from Walsh when she went to Plaintiff's home on August 16, 2011, and facilitated the transfer of the Younger Children from Plaintiff to their father. The facts of this case satisfy each of the four factors outlined by the Tenth Circuit in determining whether the reliance on legal counsel rises to the level of extraordinary circumstances. Therefore, even if the Court had found that Defendant Hinzman violated a clearly established constitutional right, her reliance on Walsh's advice constitutes an extraordinary circumstance that entitles her to qualified immunity.[53]

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Doc. 82) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 86) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 1st day of July, 2015.

*[signature]*
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[52] *V-1 Oil Co.*, 902 F.2d at 1488.

[53] In light of the Court's ruling that Defendants are entitled to qualified immunity, the Court declines to address the remaining issues set forth in Plaintiff's summary judgment motion.